# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

KENNETH REDD,                )

                          )

        Movant,          )

                          )

    v.                )          No. 4:08-CV-1459 CAS

                          )

UNITED STATES OF AMERICA,     )

                          )

        Respondent.     )

## MEMORANDUM AND ORDER

This matter is before the Court on Movant Kenneth Redd's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255. The government has responded and the motion is fully briefed and ready for decision. For the following reasons, the Motion to Vacate will be dismissed.

## Background

On August 11, 2005, Movant was indicted for the following offenses: (1) felon in possession of firearms; (2) tampering with physical evidence; and (3) tampering with a witness. After an evidentiary hearing, Movant's Motion to Suppress Evidence and Statements was denied. On December 7, 2005, a jury found Movant guilty of all three counts. On February 23, 2006, the Court sentenced Movant to 240 months, concurrently on all counts. Thereafter, Movant's conviction was affirmed on direct appeal. United States v. Redd, 219 F. App'x 594 (8th Cir. 2007) (per curiam).[1]

---

[1]Movant filed two direct appeals in this case. In his first direct appeal, Movant alleged the Court erred in determining his Armed Career Criminal status. Movant filed a second direct appeal of this Court's order denying his Motion for a New Trial, and then filed this § 2255 Motion, while his direct appeal of this Court's order was pending. Because Movant's second direct appeal was pending, this Court stayed proceedings on Movant's § 2255 Motion. (See United States v. Redd; 4:05-CR-458 CAS (E.D. Mo.) (Doc. 100); Redd v. United States, 4:08-CV-1459 CAS (Doc. 6)). The Eighth Circuit affirmed this Court's order denying Movant's Motion For a New Trial on direct appeal and this Court lifted the stay. See United States v. Redd, No. 08-2561, 2009 WL 4418287, at *1 (8th Cir. Dec. 4, 2009) (unpublished per curiam).

The United States Supreme Court denied Movant's petition for writ of certiorari. Redd v. United States, 522 U.S. 874 (2007). Movant timely filed his §2255 motion for postconviction relief on September 23, 2008.

**Grounds**

Movant raises the following grounds in his § 2255 Motion:

(1) Trial counsel was ineffective for failing to object to the Magistrate's Report and Recommendation that denied his Motion to Suppress Evidence and Statements ("Motion to Suppress"). Movant concedes there was reasonable suspicion to detain him, but states "the magistrate was entirely incorrect in his assessment there was probable cause to put the Petitioner under arrest." Movant's Memorandum at 15.

(2) Amendment 709 of the United States Sentencing Guidelines is retroactive as it applies to section 4A1.2(a)(2), and this precludes Movant from being sentenced as an Armed Career Criminal.

(3) Trial counsel was ineffective for failing to investigate and object to communications that were, according to Movant, unlawfully intercepted and illegally disclosed.

(4) Appellate counsel was ineffective for failing to raise the following issues on appeal: (a) there was a lack of probable cause to seize Movant and that the Magistrate's report and recommendation was flawed; and (b) there was insufficient evidence to sustain the conviction.

**Legal Standard**

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255, the errors of which the movant complains must amount to a fundamental miscarriage of justice. Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). The

Supreme Court has stated that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

A movant faces a "heavy burden" to establish ineffective assistance of counsel in the context of section 2255. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). To prevail on an ineffective assistance of counsel claim, a movant must show both that (1) counsel's performance was deficient, and (2) he was prejudiced by the deficient performance. See McReynolds v. Kemna, 208 F.3d 721, 722 (8th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). A court may address the two prongs in any order, and if the movant fails to make a sufficient showing of one prong, the court need not address the other prong. Strickland, 466 U.S. at 697; Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000).

Under the deficient performance inquiry of Strickland, a court considers whether counsel's performance was reasonable "under prevailing professional norms" and "considering all the circumstances." Burkhalter v. United States, 203 F.3d 1096, 1098 (8th Cir. 2000) (quoting Strickland, 466 U.S. at 688). It is presumed that counsel acted reasonably, and much deference is granted to counsel's performance. Id.; see Parkus v. Bowersox, 157 F.3d 1136, 1139 (8th Cir. 1998). Prejudice is shown if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Because the failure to establish prejudice can be dispositive of a case," this Court "need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice." Apfel, 97 F.3d at 1076 (citations omitted). Further, statements which are self-serving and unsupported by evidence do not establish a basis for relief under section 2255. Apfel, 97 F.3d at 1077.

"A § 2255 motion 'can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003) (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)).

**Discussion**

### A. Ineffective Assistance of Trial Counsel (Illegal Search and Seizure)

In the first ground, Movant asserts that his trial counsel was ineffective for failing to object to the Magistrate Judge's Report and Recommendation that denied his Motion to Suppress Evidence and Statements and that his conviction was obtained as a result of evidence obtained from an illegal search and seizure without a warrant and valid consent. Movant did not raise this issue in his direct appeal.

As a threshold matter, the failure to raise the search and seizure issues on direct appeal acts to bar Movant from raising the issue for the first time in his § 2255 motion. See Frady, 456 U.S. at 167-68. To overcome the procedural default Movant must show both (1) cause that excuses the default, and (2) actual prejudice from the errors that are asserted, or that he is actually innocent. Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998).

Movant does not claim actual innocence with respect to the search and seizure issue. He asserts that his pretrial search and seizure claim was abandoned by counsel and was not raised on direct appeal due to the ineffective assistance of counsel. Movant has therefore alleged cause, and the Court examines whether he can establish prejudice. As stated above, to establish ineffective assistance of counsel in the context of section 2255, a movant faces a heavy burden. Apfel, 97 F.3d

at 1076.  Movant must prove (1) deficient performance--that his counsel failed to exercise the customary skills and diligence that a reasonably competent attorney would have exhibited under similar circumstances; and (2) prejudice--a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  See id. (quoted case omitted).

Where a movant argues that his conviction should be set aside for ineffective assistance of counsel for failure to object to an adverse recommendation on a motion to suppress evidence, the movant must establish that he was prejudiced by the failure.  See DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000) (movant must establish prejudice where counsel failed to file a motion to suppress evidence).  Where a movant would have lost on an objection to an adverse recommendation on a motion to suppress had it been made, he was not prejudiced by the failure to file.  See Iron Wing v. United States, 34 F.3d 662, 665 (8th Cir. 1994) (movant is not prejudiced by counsel's failure to file a motion to suppress if it would have been denied).  In this case, Movant must establish that he was prejudiced by counsel's failure to object to the Magistrate Judge's recommendation on his motion to suppress evidence and statements.

Movant appears to argue that counsel's failure to object to the report and recommendation that recommended denial of his motion to suppress is, in and of itself, so deficient as to constitute a per se violation of the Sixth Amendment.  This argument cannot be accepted.  Even a complete failure to file a motion to suppress is not per se ineffective assistance of counsel that dispenses with the need to demonstrate actual prejudice.  See Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); Fulton v. Purkett, 2008 WL 5191470, at *5 (E.D. Mo. Dec. 11, 2008).  If a failure to file a motion to suppress does not constitute ineffective assistance of counsel per se, it necessarily follows that failure to object to a report and recommendation is not ineffective assistance of counsel per se.

Thus, Movant must prove both prongs of the Strickland test, i.e., defective performance and prejudice.

Movant does contend that he was prejudiced by his counsel's failure to object. To determine if the attorney's failure to object to the report and recommendation was deficient performance and, if it was, whether Movant was prejudiced as a result, it is necessary to discuss the merits of the underlying motion to suppress.

The Court has read defendant's motion to suppress evidence and statements, the transcript of the evidentiary hearing held on October 11, 2005, and the Memorandum and Report and Recommendation of United States Magistrate Judge from the underlying criminal matter. The Court adopts the Magistrate Judge's Findings of Fact, as these facts are supported by the record, and quotes from the Magistrate Judge's Memorandum verbatim:

1. On July 5, 2005, Kirkwood Police Sergeant William McEntee was murdered execution style while sitting in his police car. The suspect who shot Sergeant McEntee escaped with the weapon used in the murder, along with Sergeant McEntee's department issued pistol and two clips or magazines taken from Sergeant McEntee's person. Kevin Johnson, Jr., ("Jr.") was identified as the individual who killed Sergeant McEntee, and the police learned that Jr. drove a white Ford Explorer and was wanted on a Missouri state probation violation. The police also learned that the Explorer was no longer located at Jr.'s residence.

2. On July 6, at approximately 11:00 a.m., Detective Nickerson received a telephone call from a person in law enforcement who advised Detective Nickerson that a confidential source who wished to remain anonymous provided information about Jr. The source advised that (1) the white Explorer was located at the Nantucket Gardens Apartments complex in Ferguson, Missouri, at or near 144 Joyce Ellen Lane where Defendant resided; (2) Defendant was contacted by Kevin Johnson, Sr., ("Sr."), Jr.'s father, who lived in Berkeley, and Defendant was asked to move the Explorer because Jr. had some "static" with the police in Kirkwood; (3) the source knows Defendant and Defendant's girlfriend's cellular telephone numbers; (4) the Defendant was on parole in Missouri, and a visit to Defendant's parole officer was scheduled on July 6; and (5) Sr. asked Defendant to rent or acquire a vehicle to provide to Jr. so that Jr. could leave the area. Police officers verified that Defendant was on parole, that Defendant had an appointment with his Missouri State Parole Officer Dionna Betts on July 6, and that Sr. lived in Berkeley, Missouri. At

the request of the St. Louis County Police Department, the Ferguson Police Department located the Ford Explorer near 144 Joyce Ellen in the Nantucket Gardens Apartments complex, and it was reported that the vehicle was unoccupied. Detective Nickerson contacted the Missouri Department of Probation and Parole and was advised that Defendant was presently in Ms. Betts's waiting room waiting for an appointment with the probation officer. Based on their investigation, the police believed that Jr. was currently with Defendant looking for transportation out of town.

3. Detective Ceriotti and other law enforcement officers proceeded to the Missouri Probation and Parole Office at 4040 Seven Hills Road to talk with Defendant. These officers knew of the McEntee murder and knew that two handguns and two ammunition magazines were missing. They also knew that Jr. drove a white Ford Explorer, and that Jr. was still at large. The officers were advised that Jr. was in a vehicle in the parking lot of the parole office, and that Jr. arrived with Defendant for Defendant's parole appointment. The parking lot of the parole office was secured by police officers to prevent entry or exit onto or from the parking lot. Detectives Ceriotti and Deeba were met by a parole office supervisor who directed them to Ms. Betts's office. The police officers knocked on her door, were admitted, and observed Defendant sitting in the chair across from Ms. Betts's desk. Detectives Ceriotti and Deeba wore bulletproof vests with their police department badges visible in front. They identified themselves as police officers. For their safety and for the safety of Ms. Betts, Defendant was patted down for weapons and handcuffed. The detectives did not want Defendant to flee and wished to avoid a struggle with Defendant. The officers were concerned that if Defendant escaped, he would advise Jr. of their presence. Defendant was in custody at that time and was not free to leave. At this first meeting with Defendant, the officers were aware of all of the information the confidential source provided to Detective Nickerson.

4. Defendant was advised that the police were looking for Jr., and Defendant informed Detective Ceriotti that Jr. was not in the vehicle in which Defendant traveled to the probation office. Defendant voluntarily pointed out his cousin (a female) in a red vehicle from the parole office windows. Police converged on the car, and Jr. was not located. Detective Harold Stone read Defendant the Miranda[2] warnings on the parking lot of the parole office within minutes of Defendant being handcuffed and searched. Defendant understood the warnings, was coherent, and the police officers used no threats, promises, or coercion to secure any statement from Defendant. Defendant advised law enforcement officers that he did not know where Jr. was but would assist in locating him. Defendant stated that he was contacted by Sr. who said that Jr. was in some "static" with the Kirkwood Police Department, and Sr. asked Defendant to hide the Ford Explorer. Defendant stated that he drove the Explorer to his Nantucket Gardens Apartments complex the previous evening and intended to use the Explorer to drive to the parole office. Defendant then heard a

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

news report about the killing of Sergeant McEntee, and of Jr.'s and the Ford Explorer's alleged involvement. Defendant, therefore, moved the Ford Explorer to another part of the apartment complex parking lot away from his apartment. The interview in the parole office parking lot took approximately five minutes. Defendant stated that he never met Jr., did not know him, and did not know about the murder or Jr's suspected implication until he heard the morning news report.

5. Detective Ceriotti requested permission to search Defendant's apartment for Jr. and the missing weapons and magazines, and Defendant consented to the search. Defendant advised the police officers that he had two weapons in his apartment, "a big gun and a little gun." Detective Will transported Defendant to the apartment in which Defendant advised law enforcement officers that he resided. Detective Will read Defendant the <u>Miranda</u> warnings, and Defendant stated that he understood the warnings. Defendant was questioned in the police car, and he repeated the information he provided to Detectives Ceriotti and Stone. Defendant also advised that he resided at 1002 Chambers Road in the Nantucket Gardens Apartments complex. When the police car arrived at the Nantucket Gardens Apartments complex, Defendant directed the police officers to the apartment in which he resided. Defendant signed a Consent to Search form (Gov. Ex. 1) which was filed out by Detective Stone except for Defendant's signature. There is no evidence of threats, coercion, or force in order to secure Defendant's cooperation in signing this form. Defendant directed the police officers to his apartment, Apartment D, but he advised Detective Stone that he thought his residence was Apartment C. The consent form was prepared listing Apartment C as Defendant's apartment. Defendant provided consent to search Apartment D. Defendant advised officers that neither Jr. nor the two handguns were in his apartment.

6. At the Nantucket Gardens Apartments complex, Defendant directed officers to his apartment and provided a key to that apartment to the law enforcement officers.[3] (Gov. Ex. 9.) The apartment was opened with a key, and a police officer and a police dog entered the apartment after the entering police officers announced themselves as police with a police dog. The dog was requested for the safety of the searching police officers. No one was in the apartment. The apartment was searched for Jr. and the two weapons, neither of which were discovered. A rifle, an over-and-under shotgun, a pistol, and a BB gun pistol were discovered and seized from two closets in the apartment. (Def. Ex. A.) Defendant was transported to the

---

[3]Detective Will testified that Defendant was in his custody from the parking lot of the parole office through the search of the apartment at the Nantucket Gardens Apartments, and that Detective Will did not see an officer retrieve a key from Defendant. Detective Will testified that his attention was directed to Detective Ceriotti for a period of time when the detective and Defendant were at the apartment complex.

police station at the end of the search. It is the Government's position that Defendant was arrested after the weapons were discovered in the apartment.

7. At approximately 1:50 p.m. on July 6, Defendant met with Detective Nickerson at the police station. Detective Nickerson provided Defendant with the <u>Miranda</u> warnings, and Defendant stated that he understood the warnings. Defendant agreed to cooperate. Defendant made a voluntary statement consistent with his prior statements to police officers. Defendant was not threatened or forced to make a statement, and no promises were made to Defendant in return for his cooperation. Defendant was booked and provided a Tree Edge Court address as his residence.

8. Special Agent Ridgill arrived at the St. Louis County Police Department interview room on the afternoon of July 6 to interview Defendant. Defendant was provided a waiver of rights form that included the <u>Miranda</u> warnings and a waiver of those rights. (Gov. Ex. 2.) Agent Ridgill read the form to Defendant, and Defendant understood and signed the waiver form. Defendant then provided a handwritten statement to Agent Ridgill denying ownership of the guns discovered in the Chambers Road apartment. (Gov. Ex. 3.) Defendant's waiver and statement was voluntary, and Defendant was not coerced or forced to cooperate. Nothing was promised to Defendant in return for his cooperation.

9. Linda Pool was Defendant's girlfriend and lived in the apartment at 1002 Chambers Road, Apartment D. (Gov. Ex. 5.) Ms. Pool made a voluntary handwritten statement for law enforcement officers in which she stated that she and Defendant both had a key to the apartment. (Gov. Ex. 4.) Ms. Pool claimed ownership of one of the weapons found in the apartment. Ms. Pool was the only individual listed on the lease of the apartment.

10. On July 30, 2005, Special Agent Ridgill contacted Ms. Pool again because the police had information that Defendant was directing individuals to retrieve items from the Chambers Road apartment from a telephone in the corrections facility in which Defendant was housed. (See Gov. Ex. 12.) Ms. Pool signed a Consent to Search form for the basement and storage locker of her apartment. (Gov. Ex. 6.) Items of men's clothing were discovered in the locker and seized. (Gov. Ex. 11.) The basement requires a key to enter, and the locker area is unlocked, but Ms. Pool's storage area is locked. (Gov. Ex. 10.)

11. Counsel for the parties entered into a stipulation. (Gov. Ex. 12.) The stipulation provides that Defendant was confined in the St. Louis County Department of Justice Center ("DJS"); Missouri Department of Corrections at the Eastern Regional Diagnostic and Correctional Center at Bonne Terre, Missouri, ("Bonne Terre"); and the St. Francois County Law Enforcement Detention Center ("St. Francois County") since his arrest in this matter. In each facility, the inmates are permitted to use the facility's telephone. Each call that originates from these facilities contains an audible prompt which states that the call from the particular

corrections facility may be recorded or monitored. The inmates can hear this prompt. DJS and Bonne Terre have recorded telephone calls from Defendant and have provided those records to law enforcement officers. All three facilities record all inmates' telephone calls.

Mem. at 1-8 (Doc. 38 in Case No. 4:05-CR-458 CAS).

In the § 2255 motion, Movant concedes that the police had reasonable suspicion for the initial encounter at the parole office. Movant's Mem. at 11. Movant contends, however, that his rights were infringed "when the stop matured into an overly intrusive seizure based on less than probable cause." Id. Movant cites Officer Ceriotti's testimony at the evidentiary hearing that there was no reason to believe Movant had committed or was committing a crime while at the parole office, and there was no legal reason to arrest him. Movant contends the Magistrate Judge erroneously concluded there was probable cause for his arrest at the parole office. Movant also contends the police illegally seized him at his parole officer's office and made him go to his apartment against his will.

The Court disagrees. The Magistrate Judge correctly concluded that a Terry[4] stop of Movant at the parole office was justified based on reasonable suspicion, as Movant concedes, and that Movant was in custody at the time he was handcuffed. The officers were investigating the execution-style murder of a police officer and had information from a confidential informant that led them to believe Movant moved the murder suspect's vehicle, had the suspect in Movant's vehicle, and was attempting to secure new transportation to help the suspect escape. The officers also knew there were two weapons and ammunition missing from the murder. Under these particular facts, the officers had justification to immediately pat down and handcuff Movant at the probation office for the safety of all present and to restrain defendant from any attempt to fight or

_____

[4] Terry v. Ohio, 392 U.S. 1, 30 (1968).

flee. Cf. United States v. Navarrete-Barron, 192 F.3d 786, 789 (8th Cir. 1999) (noting that numerous courts have held that using handcuffs can be a reasonable precaution during a Terry stop, under appropriate circumstances).

Officer Ceriotti told Movant the officers were trying to find Johnson Jr. and had information that Jr. might be with Movant. The officer asked Movant if Johnson Jr. was in his car and Movant responded that he was not. One of the officers then asked Movant to show them where the car was parked. Movant consented and led the officers to a part of the building from which the car could be seen, and in response to a question said that his female cousin had brought him to the parole office that morning. As soon as the officers observed other officers remove the cousin from the car, they escorted Movant outside the building to the parking lot where another officer advised Movant of his Miranda rights. The officers then asked additional questions, including whether Movant knew where Johnson Jr. was. Movant denied ever seeing or speaking with Johnson Jr. and indicated he wished to cooperate. As found by the Magistrate Judge and set forth above, Movant then admitted he moved the Explorer to his apartment complex after Johnson Jr.'s father asked him to hide it because of Johnson Jr.'s "static" with the police, and later moved it again after hearing the news report concerning the police officer's murder and the suspected involvement of Johnson Jr. and the Explorer. To this point, the encounter between Movant and the officers had lasted only approximately ten minutes.

The Magistrate Judge correctly concluded that the officers had probable cause to arrest Movant for tampering with physical evidence in violation of § 575.100.1(1), Missouri Revised Statutes, or hindering prosecution in violation of § 575.030.1(3), Mo. Rev. Stat., based upon the information received from the confidential source which they were able to corroborate. The probable cause was bolstered by the incriminating statements Movant made, after being given the

Miranda warnings, that he moved the Explorer at Johnson, Sr.'s request and then moved it again after having heard the news report. Officer Ceriotti's testimony that he did not believe he had probable cause to arrest Movant concerned the point in the encounter when the officers had just entered the parole office and immediately conducted the pat-down and cuffed Movant. This testimony does not undermine the Magistrate Judge's conclusion that the officers had justification to handcuff Movant or that probable cause later developed to arrest Movant. Moreover, the determination whether probable cause existed is a matter for the Court to determine.

Movant contends that after the police determined Johnson Jr. was not present at the parole office, "the purpose and scope of their suspicions had been satisfied and the encounter should have ended right there inside the building." Movant's Mem. at 3, 13, 17. Contrary to this contention, once the police corroborated the informant's tip by confirming Movant's connection to the white Explorer and the Johnsons, Movant's continued detention was reasonably related to the ongoing investigation which was intended to located Johnson Jr. and the missing weapons, and included inquiry into the extent of Movant's involvement and his intent in moving the Explorer and aiding the Johnsons.

The officers' primarily interest while at the parole office remained finding Johnson Jr. and the weapons. The exigency of the situation and the probable cause to arrest Movant for tampering with physical evidence and hindering prosecution allowed the officers to transport Movant to his apartment complex to further the investigation into Johnson Jr.'s whereabouts. Once there, the officers observed the white Explorer and asked Movant for consent to search his apartment to look for Johnson Jr. Movant voluntarily gave consent for the apartment to be searched, and during the search the officers found the guns. After considering Movant's characteristics and the details of the environment in which the consent was given, the Magistrate Judge correctly concluded that the

officers' request to search the apartment did not violate the Fourth Amendment because Movant voluntarily consented to the search, and the fruits of the search need not be suppressed.

Movant's contention that he did not voluntarily consent to leave the parole office is largely irrelevant because the officers had reasonable suspicion and probable cause to detain and arrest him at that time. Further, Movant's contention that he did not leave the parole office voluntarily is inconsistent with the ample evidence that he was cooperative with the officers, including the statements he made.

Movant also asserts that his statements should be suppressed because he was illegally seized. Movant's Mem. at 19. For the reasons stated above, Movant was legally detained by the officers, he was advised of his Miranda rights on the parking lot of the parole office, and the all of his statements were voluntary. Movant was not prejudiced by his initial statements given prior to the Miranda warning, which were made in response to questions prompted by the officers' concern for public safety, because the statements were not incriminating and were not offered into evidence at trial.

Based on the foregoing, the Court finds and concludes that Movant's trial counsel's performance was not deficient and did not prejudice Movant, because any objection to the Magistrate Judge's recommendation that the motion to suppress should be denied would have been unsuccessful. See Thomas v. United States, 951 F.2d 902, 904 (8th Cir. 1991) (per curiam) (counsel is not ineffective for failing to raise meritless claims). The Court finds that Movant has not made the requisite showing of actual prejudice entitling him to relief. Movant's ineffective assistance of counsel claim is without merit and therefore is denied as procedurally barred.

**B.  Amendment 709**

Movant's second ground is that Amendment 709 of the United States Sentencing Guidelines is retroactive as it applies to section 4A1.2(a)(2), and this precludes Movant from being sentenced as an Armed Career Criminal.

This ground is not properly raised in a Section 2255 proceeding and should have been raised on direct appeal.  See Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995).  "While section 2255 does provide relief for cases in which 'the sentence was in excess of the maximum authorized by law,' this provision applies to violations of statutes establishing maximum sentences, rather than garden-variety Sentencing Guideline application issues."  Id.  See also Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996) (claim for retroactive application of Amendment 439 "falls far short" of being cognizable in 2255 motion).  Movant's ground regarding Amendment 709 is not cognizable under § 2255 and should be denied on that basis.[5]

**C.  Ineffective Assistance of Counsel - Intercepted Communications**

Movant's third ground is that trial counsel was ineffective for failing to investigate and object to recordings of telephone communications he made while being held at the St. Louis County

---

[5]Movant's ground concerning Amendment 709 would have been more appropriately presented under 18 U.S.C. § 3582(c)(2).  The result would be the same, however, as Movant's argument fails on the merits.  On February 23, 2006, Movant was sentenced as an Armed Career Criminal under 18 U.S.C. § 924(e).  On November 1, 2007, United States Sentencing Guidelines § 4A1.2(a)(2) was amended by Amendment 709, which amended Guidelines § 4A1.1 and § 4A1.2 concerning criminal history category and computation of criminal history.  Because Movant was sentenced prior to November 1, 2007, Amendment 709 must be retroactive to apply to his case.  Guideline § 1B1.10, titled "Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)," lists all Guideline Amendments that may be applied retroactively.  Because Amendment 709 is not listed in § 1B1.10(c), it is not retroactive, United States v. Peters, 524 F.3d 905, 907 (8th Cir.) (per curiam), cert. denied, 129 S. Ct. 290 (2008), and is not applicable to Movant's case.  Because the Guideline Amendment upon which Movant relies may not be applied retroactively, there is no legal basis for computing the guideline sentence applicable to the offense of conviction differently than it was computed at sentencing.

Department of Justice Services ("DJS") that were, according to Movant, unlawfully intercepted and illegally disclosed in violation of his Fourth Amendment rights. Movant contends the communications were illegally intercepted and disclosed because (1) "the DJS policy is inadequate on its face to allow for monitoring of inmate phone calls," (2) the DJS policy does not cite any legal authority that would permit DJS to record and monitor inmate telephone communications; (3) Movant never agreed to have his communications intercepted or monitored, and (4) DJS has no regulations governing whether outside law enforcement officials may be permitted to utilize the intercepted communications without first obtaining a subpoena.

The record reflects that Movant's trial counsel did investigate this claim. In the underlying criminal matter, the parties entered into a stipulation regarding the circumstances in which the telephone recordings of Movant's conversations were made. In each instance, there was an audible prompt at the beginning of each call, advising Movant and the other party to the conversation that their call was being recorded pursuant to DJS policy. The stipulation also reflects that Movant and other parties to the calls discussed the fact that their phone calls were being recorded. <u>See</u> Ex. A to Gov't Response. The Magistrate Judge considered the Stipulation and determined the conversations should not be suppressed. Magistrate's Mem. at 7-8, 19-20.

More importantly, the constitutionality of such recordings is well-established. The Fourth Amendment is not triggered unless the state intrudes into an area "in which there is a 'constitutionally protected reasonable expectation of privacy.'" <u>New York v. Class</u>, 475 U.S. 106, 112 (1986) (cited case omitted). A "constitutionally protected reasonable expectation of privacy" exists only if (1) the defendant has an actual subjective expectation of privacy in the place searched and (2) society is objectively prepared to recognize that expectation. <u>Katz v. United States</u>, 389 U.S. 347, 360 (1967) (Harlan, J., concurring).

15

Neither expectation exists in this situation. Although Movant claims he had a subjective expectation of privacy in the calls, the Magistrate Judge properly concluded that Movant knew of DJS's policy by virtue of the audible prompt that precedes each outgoing telephone call Movant made. The Eighth Circuit has held that "inmates impliedly consent to having their telephone conversations taped when they know a policy of recording all inmate telephone calls exists." United States v. Hatcher, 323 F.3d 666, 675 (8th Cir. 2003) (J. Bye, concurring). If Movant knew that DJS was recording his calls, he cannot have thought his calls were private. Further, even if Movant believed that his calls were private, no prisoner should reasonably expect privacy in his outbound telephone calls, except for calls to his attorney. Although prisoners do not forfeit all of their privacy rights in jail, those rights are severely curtailed. See, e.g., Hudson v. Palmer, 468 U.S. 517 (1984) (holding that prisoner had no reasonable expectation of privacy in his prison cell); Lanza v. State of New York, 370 U.S. 139 (1962) (holding that prisoner had no reasonable expectation of privacy in public jail visiting rooms).

The Eighth Circuit has stated that, as a matter of law, it is objectively unreasonable for persons to expect that conversations taking place in a jail would not be intercepted, as "[t]he singular purpose of a jail is the confinement of known and suspected criminals[.]" Angel v. Williams, 12 F.3d 786, 790 (8th Cir. 1993). See United States v. Harrelson, 754 F.2d 1153, 1169 (5th Cir.) (holding that it was not objectively reasonable to expect no interception of a conversation that took place in jail), cert. denied, 474 U.S. 908, and 474 U.S. 1034 (1985); see also Omnibus Crime Control and Safe Streets Act of 1968, S.Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S.C.C.A.N. 2112, 2178 (stating that expectation of no interception would be "unjustified in certain areas; for example a jail cell"); compare United States v. Clark, 22 F.3d 799, 801-02 (8th Cir. 1994) (holding that defendant's subjective expectation of privacy in a conversation held in the rear seat

of a police car, which was being recorded without the defendant's knowledge, was unreasonable).

In United States v. Eggleston, 165 F.3d 624, 626 (8th Cir. 1999), the Eighth Circuit held that a county jail inmate's Fourth Amendment rights were not violated where he received notice that under jail policy, all inmate telephone calls, except those to lawyers, were subject to monitoring and recording. In United States v. Horr, 963 F.2d 1124, 1126 (8th Cir.), cert. denied, 506 U.S. 848 (1992), the Eighth Circuit held there is no Fourth Amendment violation when telephone conversations made from prison are recorded because inmates impliedly consent to the recordings, even if they are unable to refuse such monitoring. In Horr, the defendant, who was incarcerated in the federal Bureau of Prisons, received an orientation handbook describing the phone policy, and also signed a form indicating his knowledge of the policy. Id. The defendant also recalled seeing signs near the phones warning that calls were recorded. Id.

Although the defendants in Eggleston and Horr received written notice of the inmate telephone recording policy and there is no evidence that Movant received similar written notice, the audible prompt at the beginning of each call was adequate notice to Movant that his telephone conversations were being recorded and monitored. Movant therefore implicitly consented to the monitoring and recording of his telephone conversations. This argument is therefore unavailing.

Movant's assertion that DJS lacked the authority to record his conversations is not supported by citation to any relevant legal authority and is without merit. Assuming for purposes of argument that the Fourth Amendment is triggered by routine taping of inmate telephone calls, institutional security concerns justify such recordings and render them reasonable for Fourth Amendment purposes. See, e.g., United States v. Amen, 831 F.2d 373, 379 (2d Cir.1987) (upholding routine recordings of prison phones because of institutional security concerns), cert. denied sub nom. Abbamonte v. United States, 485 U.S. 1021 (1988); United States v. Willoughby, 860 F.2d 15 (2d

17

Cir.1988), cert. denied, 488 U.S. 1033 (1989) (same); United States v. Hearst, 563 F.2d 1331, 1346 (9th Cir. 1977), cert. denied, 435 U.S. 1000 (1978) (same).

Movant's assertion that A.T.F. agents were required to obtain a subpoena before they could receive the DJS recordings of Movant's telephone conversations is also without merit. Movant cites 18 U.S.C. § 2517(5), part of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 28 U.S.C. §§ 2510, et seq.[6] Title III forbids the intentional use of any "electronic, mechanical, or other device to intercept any oral communication[.]" 18 U.S.C. § 2511(1)(b). Because it has been held that Title III applies to the prison system, see, e.g., United States v. Hammond, 286 F.3d 189, 192 (4th Cir. 2002) (citing cases), DJS's routine taping policy might appear on first glance to violate Title III.

The Court concludes, however, that two exceptions to Title III apply in this context. The first is the "law enforcement" exception. Under this exception, oral communications may be intercepted by investigative and law enforcement officers acting in the ordinary course of their duties. See 18 U.S.C. § 2510(5)(a) (excluding from the definition of "electronic, mechanical, or other device" "any telephone or telegraph instrument, equipment or facility, or any component thereof . . . being used by . . . an investigative or law enforcement officer in the ordinary course of his duties.").

---

[6]Under 18 U.S.C. § 2517, where law enforcement officials intercepting communications pursuant to an order authorizing the interception for evidence of one crime inadvertently obtain evidence of another crime, they are permitted to share that information with another investigative or law enforcement officer for his use in properly performing the official duties of the officer making or receiving the disclosure. The subsection Movant cites, § 2517(5), authorizes the receiving officer to testify concerning the shared information or evidence derived therefrom "when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provision of this chapter [18 U.S.C. §§ 2510 et seq.]." Because the Court concludes, for the reasons discussed below, that exceptions to Title III are applicable here, the section Movant cites is not applicable.

DJS is a law enforcement agency whose employees record all non-privileged outbound inmate telephone calls pursuant to policy. Several Circuit Courts of Appeal have held that interception of inmate calls under similar circumstances is in the ordinary course of the employees' duties. See, e.g., United States v. Lewis, 406 F.3d 11, 16-18 (1st Cir. 2005); Hammond, 286 F.3d at 192; United States v. Van Poyck, 77 F.3d 285, 291-92 (9th Cir.), cert. denied, 519 U.S. 912 (1996); United States v. Paul, 614 F.2d 115, 117 (6th Cir.), cert. denied, 446 U.S. 941 (1980); United States v. Feekes, 879 F.2d 1562, 1565-66 (7th Cir. 1989). The Court agrees and concludes that the law enforcement exception applies to DJS's routine taping policy.

A second exception to Title III, consent, also applies to Movant. When one party consents to the interception of a communication, Title III is not violated. 18 U.S.C. § 2511(2)(c). Consent may be express or may be implied in fact from "surrounding circumstances indicating that the [defendant] knowingly agreed to the surveillance." Amen, 831 F.2d at 378; Griggs-Ryan v. Smith, 904 F.2d 112, 116-17 (1st Cir. 1990). The Court has determined that Movant impliedly consented to the recording of his telephone calls at DJS based on (1) the audible prompt at the beginning of each telephone call he placed from DJS, and (2) the fact that Movant cannot have a reasonable expectation of privacy concerning his telephone conversations while in jail. The consent exception to Title III therefore also applies.

For these reasons, Movant's motion to suppress the telephone recordings lacked merit and was properly denied. Movant's counsel was not deficient and did not have a duty to further pursue the issue concerning interception of Movant's telephone communications, because the issue would not have succeeded. Movant therefore cannot show deficient performance or prejudice. Movant's third ground should be dismissed.

**D. Ineffective Assistance of Appellate Counsel**

Movant's final ground is that appellate counsel was ineffective for failing to raise two issues on appeal: (a) a lack of probable cause to seize Movant and the Magistrate's Report and Recommendation was flawed; and (b) insufficient evidence to sustain the conviction. The inquiry here is whether counsel's choice not to raise these issues on appeal "was an unreasonable one which only an incompetent attorney would adopt." Garrett v. United States, 78 F.3d 1296, 1305 (8th Cir.) (quotation marks and quoted case omitted), cert. denied, 519 U.S. 956 (1996).

1. Lack of Probable Cause

As discussed above, the Court has determined that the Magistrate Judge's Report and Recommendation was correct with respect to the denial of Movant's motion to suppress evidence and statements, and any objection to it concerning the issues of Movant's seizure and the subsequent search would have been futile. Similarly, because the motion to suppress evidence and statements was properly denied and Movant's statements and evidence resulting from the search were properly admitted at trial, any appeal of this issue would have been futile. As a result, counsel was not ineffective for failing to appeal the issue. See Garrett v. United States, 78 F.3d 1296, 1305 (8th Cir. 1996) (if there is no merit to a claim, appellate counsel is not ineffective for failing to raise it on appeal).

2. Sufficiency of the Evidence

The Eighth Circuit employs an "extremely strict standard of review" in determining sufficiency of the evidence to support a guilty verdict. United States v. Winston, 456 F.3d 861, 866 (8th Cir. 2006). In reviewing for sufficiency of the evidence, the Eighth Circuit views the evidence in the light most favorable to the government, and accepts all reasonable inferences drawn from the evidence that support the jury's verdict. Id. A conviction will be overturned only if no reasonable

jury could have found the defendant guilty beyond a reasonable doubt.  United States v. Bell, 477 F.3d 607, 613 (8th Cir. 2007) (cited case omitted).

Movant does not state which of the three counts of conviction his ineffective assistance/sufficiency of the evidence ground concerns, but the argument in his Memorandum in Support focuses solely on the felon in possession of a weapon charge, Count One.  To prove possession of a weapon, the government can show that the possession was either actual or constructive, and it need not be exclusive.  United States v. Saddler, 538 F.3d 879, 888 (8th Cir. 2008).  Constructive possession requires a showing that a defendant "knowingly has the power and intention to exercise control over the firearm[.]"  Id. (citing United States v. Williams, 512 F.3d 1040, 1044 (8th Cir.), cert. denied, 128 S. Ct. 2918 (2008)); see also United States v. Abumayyaleh, 530 F.3d 641, 647 (8th Cir. 2008) (for constructive possession, it is enough if the defendant had either "control over the place where the firearm was located, or control, ownership, or dominion over the firearm itself.") (quoted case omitted).  The Eighth Circuit stated in Abumayyaleh that "[s]imple 'knowledge of presence [of the firearm] combined with dominion over the premises in which the contraband is concealed will amount to constructive possession.'"  Id. (quoting United States v. Urick, 431 F.3d 300, 303 (8th Cir. 2005)).

Movant's contention that there was insufficient evidence to sustain his conviction is without merit.  When the evidence is viewed in the light most favorable to the government, there was sufficient evidence to adequately link Movant to the firearms.  First, after Movant was given Miranda warnings in the parking lot of the parole office, he told the officers they could search his apartment and that he had two firearms there, "a big gun and a little gun."  At the apartment, officers seized a .22-caliber rifle and a 20 gauge over-and-under shotgun, one of which was substantially larger than the other because the .22-caliber rifle lacked a stock.  Officer Stone observed men's

clothing in the closet from which he recovered the rifles, and men's items in the bathroom of the apartment.

The evidence showed that Movant had control over the premises where the firearms were seized. The apartment lessee, Ms. Pool, testified that between November 2004 and July 6, 2005, she and Movant were the only persons with keys to the apartment, and that Movant was the only other person with access to her apartment. (Tr. Vol. II at 7-11, 15, 34, 59, 63, 66). Ms. Poole also testified that the guns in question were not hers. (Tr. Vol. II at 14, 22-25, 34-35; Tr. Vol. III at 8). Movant and the Explorer were at Ms. Pool's apartment during the late evening of July 5, 2005 and the morning of July 6, 2005, which further establishes Movant's access to and control over the premises. (Tr. Vol. II at 9-12). The evidence showed that Movant had more than a passing connection to the property, as he moved clothing and a piano into the apartment. (Tr. Vol II at 6-7). There was also significant evidence that Movant directed Ms. Pool to lie to the grand jury, telling her to state that the firearms were hers or that they belonged to someone else, and that Movant did not live at the apartment; he also told her to move his belongings out of the apartment. (Tr. Vol. II at 24-30).

The recordings of Movant's jail telephone conversations and Ms. Pool's testimony provide a substantial basis for the jury to have found Movant guilty of Counts Two and Three, and also provide evidence of Movant's consciousness of guilt and possession of the two firearms as charged in Count One. The evidence, when viewed in the light most favorable to the government, is sufficient to establish that Movant constructively possessed the firearms. The evidence was sufficient for a reasonable jury to have found Movant guilty beyond a reasonable doubt as to all counts. As a result, counsel's performance was not deficient, and the decision to omit sufficiency of the evidence as an issue on appeal was not one "which only an incompetent attorney would

adopt." See Garrett, 78 F.3d at 1305. Movant therefore cannot show prejudice. This ground should be dismissed.

**Conclusion**

For the foregoing reasons, the Court finds that each of the grounds raised in Movant's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 is without merit or is procedurally barred, and should be dismissed. Movant's request for an evidentiary hearing is denied.

Accordingly,

**IT IS HEREBY ORDERED** that movant Kenneth Redd's Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 is **DENIED**. [Doc. 1]

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability as to any of the claims raised in Movant's § 2255 motion. See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000); Miller-El v. Cockrell, 537 U.S. 322, 342 (2003).

An order of dismissal will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  11th  day of March, 2010.